UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

C.L. ROYSTER[1]
O/B/O J.R.R.,

                        Plaintiff,

v.                                                               CASE # 19-cv-01250

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>SAMANTHA J. VENTURA, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JUSTIN L. MARTIN, ESQ.<br>BENIL ABRAHAM, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is GRANTED, defendant's motion is DENIED. The matter is REMANDED to the Commissioner solely for calculation and payment of benefits.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

J.R.R. was born on January 9. 2013, and was less than two years old at the time of the application. (Tr. 172). He was four years old at the time of his hearing in October 2017. (Tr. 15). Generally, plaintiff alleges J.R.R.'s disability consists of behavioral issues and speech delay. (Tr. 176). The alleged disability onset date is November 15, 2014. (*Id*.).

### B.   Procedural History

On December 23, 2014, plaintiff protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on J.R.R.'s behalf. (Tr. 58, 154). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 30, 2017, plaintiff and J.R.R. appeared before the ALJ, Michael Carr. (Tr. 35-57). On October 2, 2018, ALJ Carr issued a written decision finding J.R.R. not disabled under the Social Security Act. (Tr. 12-30). On July 18, 2019, the Appeals Council ("AC") denied plaintiff's request for review. (Tr. 1-4). Thereafter, plaintiff timely sought judicial review in this Court.

### C.   The ALJ's Decision

Generally, in his decision, ALJ Carr made the following findings of fact and conclusions of law:

1. The claimant was born on January 9, 2013. Therefore, he was an older infant on December 23, 2014, the date application was filed, and is currently a preschooler (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since December 23, 2014, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: mild cognitive defect, functional receptive and expressive language delays, and sound production delay (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
    (a) The claimant has a marked limitation in acquiring and using information.
    (b) The claimant has less than marked limitation in attending and completing tasks.
    (c) The claimant has a less than marked limitation in interacting and relating with others.
    (d) The claimant has no limitation in moving about and manipulating objects.
    (e) The claimant has less than marked limitation in the ability to care for himself.
    (f) The claimant has no limitation in health and physical well-being.

6. The claimant has not been disabled, as defined in the Social Security Act, since December 23, 2014, the date the application was filed (20 CFR 416.924(a)).

(Tr. 12-30).

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ improperly relied upon a stale opinion from consultative examiner Dr. Ransom. Second, the ALJ's findings of "less than marked" limitations in the functional domain of interacting and relating with others is not supported by substantial evidence. Third, the ALJ failed to properly evaluate Listing 112.05. Lastly, the ALJ failed to properly develop the record. (Dkt. No. 8 at 1 [Pl.'s Mem. of Law]).

### B.     Defendant's Arguments

In response, defendant makes four corresponding arguments. First, defendant asserts Dr. Ransom's opinion was accurate and there was no evidence of subsequent deterioration. (Dkt. No. 10 at 17 [Def.'s Mem. of Law]). Second, the ALJ reasonably determined there was a "less than marked" limitation in the domain of interacting and relating to others. (*Id.* at 22). Third, plaintiff failed to establish impairments met all the criteria for Listing 112.05. (*Id.* at 26). Fourth, the ALJ fully developed the record. (*Id.* at 29).

### III.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or

combination of impairments – i.e., a slight abnormality or combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not disabled. 20 C.F.R. § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. 20 C.F.R. § 416.926a(e).[2]

## IV.  ANALYSIS

Arguments will be addressed out of order for the ease of the Court.

---

[2]  "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id*.

### A. Interacting and Relating with Others

Plaintiff contends the ALJ erred when he determined J.R.R. does not suffer from an impairment or combination of impairments that functionally equals a listed impairment. (Dkt. No. 8). Specifically, plaintiff argues the ALJ erred when he found J.R.R. has "less than marked" limitations in the domain of interacting and relating with others. (*Id*. at 10-13). In evaluating the level of impairment in the domain of interacting and relating with others, consideration must be given to "how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." *Dayton v. Astrue,* 2012 WL 4711988, *5 (N.D.N.Y.2012) (citing 20 C.F.R. § 416.926a(i)). The Regulations provide that children should be able to "respond appropriately to a variety of emotional and behavioral cues [;] ... speak intelligibly and fluently so that others can understand; ... participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully." 20 C.F.R. § 416.926a(i)(1)(iii). The regulations further provide that older infants and toddlers (age 1 to attainment of age 3) should be able to spontaneously communicate wishes or needs, first by using gestures, and eventually by speaking words clearly enough that people who know him/her can understand what is said most of the time. 20 C.F.R. § 416.926a(i)(2)(ii). Preschool children (age 3 to attainment of age 6) should be able to socialize with children as well as adults; use words to express themselves; be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar; and speaking clearly enough that both familiar and unfamiliar listeners can understand what is said most of the time. 20 C.F.R. § 416.926a(i)(2)(iii).

Children with limited functioning in this domain include children who do not reach out to be picked up and held by caregivers; have no close friends within their age group; avoid or withdraw from known people or are overly anxious or fearful of meeting new people or trying new experiences; have difficulty playing games or sports; have difficulty communicating with others using verbal and nonverbal skills to express themselves; have difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

As clearly acknowledged by the Social Security Administration, "[a] child's language abilities are equally important in the domain of interacting and relating with others." *Miles ex rel. J.M. v. Astrue*, 775 F.Supp.2d 715, 727 (S.D.N.Y.2011) (citing S.S.R. 09-5p, 2009 WL 396026, *5 (2011)). Accordingly, "a child's problems with speech and language now need to be assessed in both the 'acquiring and using information' domain as well as the 'interacting and relating with others' domain." *Kittles ex rel. F.L. v. Barnhart*, 245 F.Supp.2d at 489 (E.D.N.Y. 2003).

In this case, the ALJ concluded J.R.R. had "less than marked" limitations in the domain of interacting and relating with others. (Tr. 26-27). In the analysis of this domain, the ALJ only discussed a suspension from school for kicking a teacher, J.R.R.'s preference to play by himself, inability to do well in a group setting, aggressive behavior with his sibling, fighting with other children often, inability to control his emotions well, and that J.R.R. said "no" a lot. (Tr. 27). Defendant asserts this was sufficient for the ALJ to conclude some limitations in the area of functioning, but that other evidence showed J.R.R.'s ability to perform some relevant, age-appropriate skills. (Tr. 27). For instance, the ALJ noted that J.R.R. was affectionate towards plaintiff, played "catch" or simple games with other children, and was cooperative and friendly toward an unfamiliar doctor instead of overly anxious or fearful of meeting a new person. (Tr. 27).

Unfortunately, only showing J.R.R. is cooperative and friendly does not satisfy all factors which the domain encompasses. *See Dunaway ex rel. E.B. v. Colvin*, 2015 WL 5712297, *16 (W.D.N.Y. September 29, 2015) ("nice kids can be disabled, too, and the domain of interacting and relating with others concerns more than fights and disruptive behavior."). In this case, the ALJ found the severe impairments of receptive and expressive language delays as well as a sound production delay but did not address the impairments in assessing limitations in the domain of interacting and relating with others. (Tr. 18). Therefore, the ALJ did not demonstrate that he fully and adequately considered the affect of J.R.R.'s speech and language delays in the domain.

Defendant argues the finding is supported by substantial evidence from a consultative examiner and non-examining review physician. Although the ALJ noted consultative examiner Dr. Ransom and non-examining review physician Dr. Ferrin opined less than marked limitation in this domain, it is not clear they considered the speech and language delays in their assessments. (Tr. 22-23). To be sure, an ALJ is entitled to rely upon opinions of both examining and non-examining State-agency medical consultants because such consultants are experts in the field of social security disability. *Wilkins v. Comm'r of Soc. Sec.*, No. 1:18-CV-00067, 2019 WL 2500500, at *6 (W.D.N.Y. June 17, 2019); *Ridosh v. Berryhill*, 2018 WL 6171713, at *6 (W.D.N.Y. Nov. 26, 2018) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non- examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.") (internal citations and quotations omitted). However, the ALJ must explain the link between his determinations and the record evidence supporting that finding and resolve inconsistencies in the evidence. As discussed in more detail below, the standardized testing performed by Dr. Ransom was inconsistent with her conclusion of only mild speech delays.

In the review of the domain, the ALJ did not discuss or cite any evidence related to J.R.R.'s speech evaluations or language difficulties. At the initial speech evaluation in May 2015, at the request of the Agency, J.R.R. was noted to not yet be using any age-level verbal and communication skills. Although Amy Atwater, M.S., CCC-SLP, stated exam results should be viewed with caution because most test items were based on elicited or caregiver responses, she observed J.R.R. could not be administered the Goldman Fristoe Test of Articulation or the Preschool Language Scale because J.R.R. would not label or imitate any of the test items. Additionally, she noted intelligibility was unable to be assessed because J.R.R. did not yet use connected speech. (Tr. 288). The following month, consultative examiner Dr. Ransom administered the Bayley Scales of Infant and Toddler Development-Third Edition and assessed only mildly deficient language skills. (Tr. 293). However, the composite scores in her report were greater than two standard deviations below the mean. Per regulations, this functioning is expected to be consistent with a marked limitation. 20 C.F.R. § 416.962a(b)(2)(iii). Furthermore, for children who have not yet attained age 3, generally a "marked" limitation is found if you are functioning at a level that is more than one-half your chronological age. 20 C.F.R. § 416.962a(b)(2)(ii). In this case, Dr. Ransom found receptive communication at the age equivalence of 13 months and expressive communication at 12 months when J.R.R. was 28 months and 19 days. (Tr. 293). The ALJ only cited to the conclusions of Dr. Ransom and never discussed the objective standardized testing that was performed. Notably, the ALJ did reference Dr. Ransom's opinion of mild delays in speech, but not specifically in the domain.

Also not addressed by the ALJ in the interacting and relating to others domain was the August 2016 speech evaluation by Kathryn Budin, MS, CCC/L-SLP finding J.R.R.'s receptive and expressive language skills were severely delayed per standardized testing, clinical observation,

professional judgment and developmental norms. (Tr. 432, 424). J.R.R. was formally assessed using the Goldman Fristoe Test of Articulation-2, which yielded an age equivalent of over half his age. (Tr. 424). At four years and two months old, his intelligibility in known contexts was measured at approximately 40% in known contexts and 20% in unknown contexts. (Tr. 425). ALJ Carr only states the evaluation showed language and communication was severely delayed with no further analysis or mention of the testing. (Tr. 22). Although he weighed the opinion of speech language pathologist Ms. Atwater he did not discuss the findings by speech language pathologist Ms. Budin. (Tr. 23).

When evaluating a child's level of impairment, the ALJ should "consider all relevant evidence in determining a child's functioning," including information from the child's teachers or from therapists. *Swan v. Astrue,* 2010 WL 3211049, *6 (W.D.N.Y.2010); *Yensick v. Barnhart,* 245 F. App'x 176, 181 (3d Cir.2007) ("[t]he ALJ may also consider other opinions about a claimant's disability from persons who are not deemed 'acceptable medical sources,' such as a therapist who is not a licensed or certified psychologist"). However, qualified speech-language pathologists are deemed acceptable medical sources for speech and language impairments. *See* Social Security Ruling 06–03P, 2006 WL 2329939, *2 (2006).

ALJ Carr focused on J.R.R.'s social skills without considering whether his speech and language deficiencies limited or affected his abilities in the domain of interacting and relating with others. The error was compounded by his failure to fully discuss the findings, including standardized testing, by a qualified speech-language specialist.

Although this Court must accept the ALJ's reasonable interpretation of evidence, the ALJ has not provided any explanation suggesting how a reasonable fact-finder could interpret this opinion as supportive of a less than marked, rather than marked, limitation in the domain of

interacting and relating with others, particularly when read with standardized testing of more than two standard deviations below the mean for expressive and receptive language skills as well as severe delays in articulation and pragmatics. *See Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 173 (N.D.N.Y. 2010)("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.' ") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). This lack of explanation is material to the outcome in this case, as a finding of greater limitation in this domain would have resulted in a finding that J.R.R. functionally equals the Listings.

As courts have repeatedly acknowledged, "[d]elay 'is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child.' "*Lavalley ex rel. A.W. v. Colvin*, 2013 WL 2444203, *15 (N.D.N.Y.2013) (quoting *Nieves ex rel. Nieves v. Barnhart*, 2004 WL 2569488, *10 (S.D.N.Y.2004)). In this case, there was a considerable delay in the hearing process, including a year between the hearing and the ALJ's decision. Given the combination of the delays and "persuasive proof of disability" in the current record, I conclude that a remand for further evidentiary proceedings would be unnecessary. *See Martinez v. Barnhart*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003).

**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** solely for calculation and payment of benefits.

Dated: December 23, 2020                        *J. Gregory Wehrman*

Rochester, New York                          HON. J. Gregory Wehrman
                                                             United States Magistrate Judge